IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TONYA SUE ZORNES                                                                                    PLAINTIFF

V.                             Civil No. 2:21-cv-02037-PKH-MEF

KILOLO KIJAKAZI[1], Acting Commissioner,
Social Security Administration                                                                     DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Tonya Zornes, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 1382.  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  42 U.S.C. § 405(g).

I.     **Procedural Background**

Plaintiff protectively filed her application for SSI on January 20, 2017[2], alleging disability since January 1, 2008, due to systemic lupus, heart disease, chronic obstructive pulmonary disease ("COPD"), severe anxiety, and depression.  (ECF No. 12-5, pp. 2-9).  An administrative hearing was held on January 8, 2019.  (ECF No. 12-2, pp. 37-68).  Plaintiff was present and represented by counsel.

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff filed a prior application for SSI in August 2008, alleging disability since August 4, 2008.  (ECF No. 12-3, p. 5).  This application was denied by an ALJ on March 9, 2010.  (*Id*. at 5-12).

Born in 1970, Plaintiff possessed a high school education. (ECF No. 12-3, pp. 17, 31). She has no past relevant work ("PRW") or transferable skills. (ECF No. 12-2, p. 27).

On January 3, 2020, the Administrative Law Judge ("ALJ") identified Plaintiff's coronary artery disease ("CAD"), gastroesophageal reflux disorder ("GERD"), hepatitis C, panic disorder, and personality disorder with borderline traits as severe impairments. (ECF No. 12-2, p. 15). He concluded she did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 16). Despite her impairments, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform unskilled light work with hazard and height precautions. (*Id*. at 18). With the assistance of a vocational expert ("VE"), he then determined there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform, including power screwdriver operator, can-filling and closing machine tender, and compression molding machine tender. (*Id*. at 29).

The Appeals Council denied Plaintiff's request for review on December 1, 2020. (ECF No. 12-2, pp. 2-5). Plaintiff subsequently filed this action on February 2, 2021. (ECF No. 2). Both parties have filed appeal briefs (ECF Nos. 15, 16), and the matter is ready for Report and Recommendation.

## II. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support

it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical and/or mental disability that has lasted at least one year and prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. 20 C.F.R. § 416.920(a)(4). The fact finder only

considers Plaintiff's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. § 416.920(a)(4)(v).

### III. Discussion

On appeal, the Plaintiff challenges the ALJ's decision for several reasons, including a contention that the RFC determination is not supported by substantial evidence and an allegation that he failed to fully develop the record.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945. A disability claimant has the burden of establishing her RFC. *Vossen*, 612 F. 3d at 1016. Although the United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question," this determination is not delegated to medical professionals or determined exclusively based on medical records. *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)); *see also Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (holding that a medical source opinion that a claimant is "disabled" or "unable to work" is not entitled to controlling weight). The final determination of RFC is left to the ALJ and based on all the relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (RFC is ultimately an administrative determination reserved to Commissioner); *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (holding RFC should be based on all relevant evidence of record).

In rendering his decision, the ALJ owes the claimant a duty to fully and fairly develop the record to ensure his decision is informed and based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). He is required to order additional opinion evidence when the available evidence does not provide an adequate basis for determining the merits of the claimant's

disability claim. *See Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010); *Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001).

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because it fails to account for her musculoskeletal impairments. Further, she insists that the ALJ failed to fully develop the record by relying on the outdated assessments of the state agency doctors and dismissing the more recent opinions of her treating provider and consultative examiner.

The transcript contains records dating back to 2014, documenting Plaintiff's treatment for systemic lupus erythematous ("SLE"), coronary artery disease ("CAD") with stenting, hypertension, anxiety disorder with panic attacks, bipolar I disorder, syncope episodes, gastroesophageal reflux disease ("GERD"), viral hepatitis C, lumbar degenerative disk disease ("DDD"), and plantar fasciitis and Achilles' tendonitis of the right foot. This includes treatment records from Plaintiff's primary care physicians ("PCP") and treating specialists, numerous emergency room ("ER") visits and hospital admissions, a plethora of objective tests, RFC assessments from non-examining agency physicians completed in April 2017 and February 2018, and the results of consultative mental and physical exams. Her treatment has included chiropractic care, prescription pain and psychotropic medications, pain management, shoe orthotics, and psychotherapy.

In October 2014, the Plaintiff was admitted to Sparks Regional Medical Center with chest pain suspicious for angina. (ECF No. 12-11, p. 28). She underwent a heart catheterization and stenting of the left anterior descending ("LAD") and right coronary ("RCA") arteries, after which she developed severe ST-segment elevation and chest pain. A second heart catheterization revealed a dissection at the proximal portion of the stent. Plaintiff was diagnosed with a non-ST-segment elevation myocardial infarction, occlusive disease of the LAD, dissection of the LAD, a

right groin hematoma, hypotension, hypertension, dyslipidemia, and a history of lupus and released home the following day.  On October 28, 2014, Plaintiff returned to the ER after blacking out while standing in her bathroom.  (*Id*. at 119).  She explained that she felt pain in the puncture site in her right groin and then lost consciousness.  Her next memory was of being on the bathroom floor.  A CT scan of her brain and chest x-rays were within normal limits.  (*Id*. at 130, 161).  Plaintiff was diagnosed with syncope with suspected cardiac dysrhythmia, hypotension, and anemia secondary to the hematoma.  Her Metoprolol and Lisinopril were successfully discontinued without incident, and she was discharged home on October 30, 2014.  (*Id*. at 81).

Records from Dr. Ngoc Van Hoang, beginning in February 2015, document a history of lower back pain related to an annular tear of a lumbar disk.  (ECF No. 12-8, pp. 28-29).  Throughout much of the relevant period, he consistently treated the Plaintiff for complaints of back pain, arthralgia and myalgia, systemic lupus, anxiety, depression, panic attacks, and mood swings.  (*Id*. at 15-28).  Dr. Hoang prescribed Lortab, Ultram, Norco, Clonazepam, and Citalopram.

Plaintiff also sought out emergent treatment for chest pain and shortness of breath ("SOB").  (ECF No. 12-7, pp. 31, 76, 80-82, 103-119; ECF No. 12-8, pp. 112-125, 150; ECF No. 12-9, pp. 9-17).  A 2D echocardiogram/doppler conducted in October 2015 revealed a normal left ventricular ejection fraction without evidence of diastolic dysfunction.  (ECF No. 12-8, p. 158).  Further, a myocardial perfusion study showed a fixed inferoapical perfusion defect consistent with an attenuation artifact and no inducible ischemia.  (ECF No. 12-7, pp. 103-119).  A Holter monitor study in October 2018 also documented normal sinus rhythm but frequent premature ventricular contractions ("PVCs").  (ECF No. 12-9, pp. 61-76).  Frequent PVCs are a known risk factor for developing cardiac arrythmia and/or cardiomyopathy.

In June 2016, Plaintiff was treated by neurologist, Dr. Jon Gustafson for continued complaints of seizure-like episodes. (ECF No. 12-7, pp. 18-21). He noted that her lab values revealed the presence of lupus antibodies.

Plaintiff complained of swollen joints on December 1, 2016. (ECF No. 12-8, p. 16). She asked Dr. Hoang to prescribe steroids. Two weeks later, she returned with complaints of a lupus flare and continued joint swelling. (*Id*. at 15). Dr. Hoang prescribed Prednisone.

On April 26, 2017, Dr. William Harrison reviewed the medical record and determined Plaintiff could perform light work but must avoid all exposure to heights or hazards. (ECF No. 12-3, pp. 4-26). On February 2, 2018, Dr. Patrick Fields conducted an independent review of the record and concurred with Dr. Harrison's opinion. (ECF No. 12-3, pp. 40-42).

Thereafter, Plaintiff saw orthopedist, Jeffrey Evans, M.D., in February 2018. (ECF No. 12-8, pp. 72-76). She reported a history of cerebral vascular accident leaving her with left-sided weakness and complained of right ankle and heel pain. After noting a tender right Achilles and plantar fascia at the heel, Dr. Evans diagnosed right Achilles tendonitis and ankle pain. He prescribed stretching exercises and heel cup inserts.

On March 30, 2018, she returned with continued tenderness at the insertion of the right Achilles. (ECF No. 12-8, pp. 69-72, 77-79). Dr. Evans advised her to continue with the heel cups, indicating he would consider an Equinus cast if her symptoms persisted. Unfortunately, her symptoms persisted, and she presented with tenderness in the right Achilles with fusiform (sausage shaped) swelling in May. Dr. Evans prescribed Diclofenac gel. (ECF No. 12-8, pp. 66-69).

In June 2018, Plaintiff reported joint, back, and right foot pain to pain specialist, Brett Whatcott, D. O. (ECF No. 12-9, pp. 117-121). On exam, she exhibited an antalgic gait with a decreased range of motion in the lumbar spine, extreme tenderness over the lower sacrum, and

spasms in the paraspinal muscles. Plaintiff indicated that walking, lifting, bending over, standing, lying on her back or side, and weather/temperature changes aggravated her pain. Dr. Whatcott prescribed Norco and discontinued the Clonazepam.

On June 29, 2018, Advanced Practical Nurse Billy Noel's exam of the Plaintiff revealed muscle and back pain with tender points and an antalgic gait. (ECF No. 12-9, pp. 116, 132-133). He diagnosed plantar fasciitis and back pain and advised her to continue with pain management.

Pain management records from August 2018 reveal continued diagnoses of lower back pain, plantar fasciitis, and lupus. (ECF No. 12-9, p. 115). However, it does not appear that a physical exam was conducted. Noting no progress toward her pain or activity goals, Dr. Whatcott increased her opioid medication to four times daily.

In early October 2018, she continued to suffer with chronic low back pain, systemic lupus, and plantar fasciitis, although she reported that her overall pain was manageable. (ECF No. 12-9, pp. 112-114). Dr. Whatcott noted that she had a chronically painful condition that was not likely to improve.

On November 7, 2018, APN Noel completed a physical RFC assessment. (ECF No. 12-8, pp. 102-103). He indicated she could not sit for six hours of an eight-hour workday; sit/stand/walk in combination for eight hours; or perform part-time work activities of any nature for more than 10 hours in a 40-hour week. Nurse Noel also identified significant limitations in her ability to reach/push/pull with her upper extremities and work with/handle small objects with both hands. Further, he concluded she would require four or more unscheduled breaks in an eight-hour workday.

On February 14, 2019, Dr. Gary Nunn examined the Plaintiff. (ECF No. 12-9, pp. 148-155). He noted 4/5 motor strength in her left arm and leg and an antalgic gait. Dr. Nunn diagnosed

polyarthritis, systemic lupus, CAD without angina pectoris, cerebral vascular disease, and hypertension. He concluded she could lift and carry 20 pounds occasionally; sit for 30 minutes without interruption for a total of one hour per eight-hour workday; stand for 10 minutes at one time for a total of one hour per eight-hour workday; and walk five minutes at one time for a total of one hour per workday. Further, Dr. Nunn limited her to occasional handling, fingering, feeling, pushing/pulling, stooping, kneeling, crouching, and work near environmental extremes, and found her incapable of climbing, balancing, crawling, working near unprotected heights and moving machinery, and operating a motor vehicle. Dr. Nunn also indicated she could not walk a block at a reasonable pace on rough or uneven surfaces or sort, handle, or use paper/files.

The ALJ assigned little weight to APN Noel's conclusions because they were indicated by check boxes alone without additional rationale, APN Noel did not qualify as an acceptable medical source, and his conclusions stand in contrast with his treatment notes and the overall record. Likewise, he dismissed Dr. Nunn's assessment because he found his restrictions to be severe in comparison to the findings in both his exam and the overall evidence of record. The ALJ failed, however, to note that both APN Noel and Dr. Nunn assessed standing and walking limitations that are well supported by the overall record. Plaintiff suffered from both plantar fasciitis, Achilles' tendonitis, and systemic lupus and was noted to have an antalgic gait, as well as tenderness on palpation of the Achilles tendon, plantar fascia, and sacrum and spasms in the paraspinal muscles. Both the Achilles tendon and the plantar fascia are activated with walking, making it difficult for the Plaintiff to stand and/or walk for long periods of time. *See* Mayo Foundation for Medical Education and Research, *Achilles Tendonitis*, *at* https://www.mayoclinic.org/diseases-conditions/achilles-tendinitis/symptoms-causes/syc20369020 (last accessed February 3, 2022); *see also* Johns Hopkins Medicine, *Plantar Fasciitis*, *at* https://www.hopkinsmedicine.org/health/

conditions-and-diseases/plantarfasciitis (last accessed February 3, 2022). Moreover, systemic lupus causes joint pain, stiffness, and swelling, contributing to her difficulty with ambulation. Accordingly, we do not find substantial evidence to support the ALJ's finding that the Plaintiff can perform the walking and standing requirements of light work. Remand is necessary to allow him to reconsider the Plaintiff's RFC.

Further, while the ALJ is correct in his assertion that APN Noel is not an "acceptable medical source" and cannot be used to establish the existence of a medically determinable impairment, he fails to recognize that evidence from "other medical sources" can be used to show the severity of the Plaintiff's impairments and the effect they have on her ability to function. SOCIAL SECURITY RULING ("SSR") 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); *see also Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016) (citing 20 C.F.R. § 416.913). In this case, APN Noel had treated the Plaintiff for approximately two years. Additionally, his findings and some of his restrictions are supported by Dr. Evans' and Dr. Hoang's treatment records, as well as Dr. Nunn's consultative exam findings. Therefore, on remand, the ALJ should be directed to reevaluate APN Noel's opinion, considering his treatment notes and the other records documenting Plaintiff's plantar fasciitis, tendonitis, and systemic lupus. The ALJ should also be ordered to obtain an assessment from Plaintiff's treating orthopedist, Dr. Jeffrey Evans.

Given that approximately one year passed between the administrative hearing and the ALJ's decision, and the opinions of the state agency physicians were completed two years prior to the ALJ's decision and prior to Plaintiff's treatment for her musculoskeletal complaints, the ALJ should have requested more recent RFC assessments. *See Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (holding ALJ has duty to request additional medical evidence when a critical issue is undeveloped, and the records presented to him do not provide sufficient medical evidence to

determine whether the claimant is disabled). Because he failed to do so, the ALJ should be further directed to order consultative orthopedic and mental status exams, complete with thorough RFC assessments, to aid him in accurately determining the Plaintiff's RFC on remand.

### IV.     Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of February 2022.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE